The Chancellor.
The original act incorporating the Morris Canal and Banking Company, was passed on the thirty-first of December, eighteen hundred and twenty-four. The object of the incorporation was to construct a canal from the Delaware river at Easton, to the tide waters of the Passaic at Newark. The capital was fixed at one million of dollars, and the other provisions of the act were such as are usual and necessary for carrying out the object. By a subsequent act, passed the twenty-sixth of January, eighteen hundred and twenty-eight,power was given to extend the canal from Newark to the Hudson river. After this work had been progressed in, like most other undertakings of the like character, it was ascertained that the cost would exceed the estimated sum ; that it would be necessary to borrow money to complete it. The first act authorizing the borrowing of money, was passed on the twenty-third of February, eighteen hundred and twenty-nine. It authorized the company to borrow five hundred thousand dollars, and to issue therefor their post notes at six per cent., and to secure the same by assignment, conveyance or transfer of the canal, with its appendages and chartered rights. It is understood this money was borrowed under the act, but has since been repaid, and no question under it has arisen or can arise. It is observable that no further loans were made under this act, but on the twenty-eighth of January, eighteen hundred and thirty, a further act, varying the provisions of the former on this subject, was passed, not limiting the sum, but authorizing the company to borrow such sum as should appear to the board of of directors proper and necessary. For securing the amount so borrowed, with interest, the company was authorized to pledge or hypothecate by wray of mortgage, trust or otherwise, howsoever, the Morris Canal, with all its privileges, appendages and appertenances,and all the property and chartered rights of the said company. In case of default in payment, authority was given by the said act, for the person or persons making such loan, by due process of law, to acquire aud have and hold, use and enjoy the said canal, with its appendages, appertenan *396 -ces, and the property of the company, and take and receive the tolls, rents, issues and profits thereof, during the whole residue •of the term for which the company was chartered or incorporated, in as full and ample a manner as the stockholders of the company might enjoy the same, subject to the restrictions •contained in the charter. It is under this act that the loan was made, on which the controversy in this cause arises. On the twenty-ninth of March, eighteen hundred and thirty, a few months after the passage of the last named act, this company, through the agency of the complainant, effected a loan at Am•sterdem, in Holland, of seven hundred and fifty thousand dollars, at five per cent., payable at a distant day, and gave as •security, a mortgage upon the canal, its appendages and •chartered rights, under and in conformity to the provisions of the act last mentioned. The complainant is a banker, residing at Amsterdam; he was the agent of the company in making the loan, and is declared by the mortgage to be the representative ■of the lenders also. The money thus loaned, was advanced accordingly, and the interest on the loan, which is made payable half yearly,has been regularly paid to the first day of January, eighteen hundred and forty-one, since which time nothing further has been paid.
The present bill is filed to foreclose this mortgage, and for a «ale of the canal. The parties to the bill are, The Morris Canal and Ranking Company, the State of Indiana, William O. Noyes, Thomas G. Talmage, Henry Yates, Abraham Richards and, David Selden. The five last named defendants are judgment ■ •creditors of the Morris Canal, and as such necessary parties. The State of Indiana is a mortgage creditor, and for a large amount. The bill sets out two mortgages given by the Morris Canal to the State of Indiana ; one of the sixth of October •eighteen hundred and forty, on the canal from Newark to Jersey City, to secure the payment of one hundred and ninety thousand dollars, and another on the seventh of October, eighteen hundred and forty, on the entire canal, to secure the payiment of nine hundred and sixty thousand dollars. To this bill *397 none of the defendants have appeared exeept the State of Indiana. As to the remaining defendants, a decree pro confesso was signed on the twenty-fifth of January, eighteen hundred and forty-two.
The State of Indiana has filed an answer, and sets up several grounds of objection to the complainants action. This answer, among other things, discloses two other mortgages, about which nothing is said in the bill, made by the company to Samuel Merrill, president of the State Bank of Indiana, in trust for the State of Indiana, for a large amount, to secure a debt due to the said State, which covers a pier or wharf belonging to the company, at Jersey City. Both of these mortgages bear date the tenth of December, eighteen hundred and thirty-nine, and it is stated by the defendants are for the same-debt, and that the last was given only to cover an omission which was made in the drawing of the first.
The cause was brought to a hearing upon the answer filed by the State of Indiana, and upon the depositions and exhibits taken and marked in the cause. The complainant and the State of Indiana are therefore the only parties litigating here; the one representing the loan of seven hundred and fifty thousand dollars, made in the year eighteen hundred and thirty, and the other the mortgages made by the company for very large sums in the year eighteen hundred and forty.
A preliminary objection is taken by the defendants to this cause being heard, for the want of parties, which objection must first be considered.
And first, it is insisted that the complainant, being a trustee or agent only of the lenders, the lenders themselves who are the cestui que trusts, are necessary parties. The undeniable general rule in equity is, that a nominal trustee cannot bring a suit in his own name alone, but must associate with it the names of the persons having the beneficial interest. The cases cited on the argument fully establish this proposition, and it will be seen by the case of Stillwell v. McNeely 1 Green’s Chan 305, that the rule is recognized in this court; but it is there *398 stated that the court will hold, as they certainly must, a discretionary power to dispense with that necessity, in cases of great inconvenience, or where unnecessary expense would be incurred. In Van Vechten and Sebring v. Terry and others, 2 John. Chan. 197, on a bill for foreclosure, a nominal trustee was held to be a sufficient party defendant, because the real owners were two hundred and fifty. This was to avoid expense.
There are two reasons why I deem it unnecessary that a.ny other persons should be made complainants. The first is, the great inconvenience to which it would subject these parties. The chai’acter of this transaction is from its very nature, and the common course of business, well understood. The complainant, being a banker of extensive money tranactions, makes this loan for the company, by opening books at Amsterdam, by which all that choose may come in and subscribe such sums as they think proper, according to the published terms. This is the common course of business, and there is no doubt from the papers that this was the course pursued here. The complainant does not appear to have lent the money himself, but to have been the .negociator and trustee. These subscriptions may be more or less, but from the large sum loaned is likely to embrace a great number of persons. These persons, scattered over the world, it would be almost impossible for the complainant to find out. The true additional parties, if any, would be the owners of the stock at the time of filing the bill, and if dead, their representatives must be substituted.
To require the complainant to take such a course, would be almost a denial of the aid of the court in the recovery of his money. I think it may well be classed among those cases which are excepted out of the general rule, from the great inconvenience which its enfoi'cement would bring upon the parties. Nor does the answer made by the defendants’ counsel to this view of the case, that this state of faets are not shown in the bill, sufficiently meet it. The character of the transaction is there stated. It appears in the correspondence between the *399 parties. It is in fact shown on the face of the mortgage itself and the court should not shut its eyes against the knowledge we all possess of the common course of events, and particularly of the course of business among men. Upon the case, as stated in the bill, every man acquainted with the manner of transacting business of this kind, will perceive, that here was a stock opened, and that all who chose came in and subscribed.
Tire second reason against sustaining this objection, arises from the face of the mortgage itself. It is not improbable that the intelligent gentleman at the head of the Morris Canal Company at the time of the giving of this mortgage. (Mr. Golden) and who was also an able lawyer, might have anticipated the embarrassment that would grow out of having anything to do in this business with the lenders of the money, and it is therefore particularly agreed, that the complainant shall represent the lenders. The company dealt only with the complainant. He is called “the agent and trustee of the several subscribers to the loan,” and throughout the writing is spoken of as Wilhem Willink, junior, “representing the said lenders.” It was therefore, a part of the original contract, that these lenders should in this transaction be represented by the complainant, and by him alone. To oblige him now, in seeking to recover this money again, in the face of this agreement, to come before the court in the names of all the lenders, would appear to me not only unnecessary, but unjust.
It was, in the next place, insisted by the defendants, that the receivers of the Morris Canal are necessary parties.
After the decree pro confesso was taken against the Morris Canal and Banking Company, it appears from the evidence in the cause, receivers were appointed for that company, under the act,entitled, “ An act to prevent frauds by incorporated companies.” A number of authorities were cited on the argument, clearly showing, that in bankruptcy cases the assignee is a necessary party; and the same rule obtains in the discharge of insolvent debtors. In these cases, however, the property of the bankrupt or insolvent passes to the assignee and vests in him. *400 Hie title is in the assignee, and he must be brought before the court. The provisions of the statute under which these receivers are appointed, are peculiar. Elmer's Dig. 32. The property of the company does not vest in the receivers, nor does the appointment of receivers necessarily put an end to the corporation. The receivers have the sole power over the corporation ; they are substituted in the place of the directors and managers, but for the purpose of settling up and closing the affairs of the company. The title to the property is not changed, but a power only is delegated to the receivers to take charge of it and sell it. These receivers too, may bring suits in their own name, and for aught I see, in the name of the corporation^ should they prefer it; and if so, they may defend a suit in the name of the corporation. As a decree pro confesso in this cause was taken against this company before the receivers were appointed, by which the right of the complainant to recover is ascertained, and the amount only remains to be settled ; and more especially, as the corporation is not put an end to by this act of the court, and the receivers may appear and controvert the amount, in the name of the corporation, I see no good reason why ''the proceedings in this cause should be delayed to bring them before the court.
It must be remembered too, that this application comes from the State of Indiana; the receivers do not apply or desire to be made parties. If the receivers were asking permission to be substituted as defendants with a view of setting up a defence I should not hesitate to admit them in any stage of the proceedings, and if a decree had not been entered before their appointment, it would be a safe course to require it to be done. In the absence, however, of any such application on the part of the ¡'receivers, and with a decree entered against the company before ¡their appointment, it is in my opinion unnecessary that they should be brought into court at the instance of a third party.
The third defect alleged by the defendant, is the omission as a party, of Samuel Merrill, president of the State Bank of Indiana, the trustee of the State of Indiana. The mortgages made *401 to Merrill are not on the canal, but on a pier or wharf at Jersey City, which, according to the answer, are in no wise affected by tbe complainant’s mortgage. This objection, therefore, cannot be sustained, at all events in this stage of the cause, foi if the complainant’s mortgage does not cover that pier, then certainly Merrill would he an improper party.
The objections, therefore, for want of parties, are overruled: which leads to the consideration of tbe cause on its merits.
The first and tbe great question is, does the complainant’s mortgage cover the canal from Newark to Jersey City? This part of the canal was surveyed, (from the evidence of Robert Gilchrist, who was for many years cashier of the company, and probably lias as much knowledge of its affairs at that time as any person,) but not excavated, nor were the lands purchased until after the mortgage to the complainant was given. The survey, although made prior to giving the complainant’s mortgage, was subsequently varied. Charles T. Shipman also says the route was surveyed before the mortgage. Did the mortgage, then, cover this part of the route ? The act authorizing the extension of the canal to Jersey City, was passed before the date of complainant’s mortgage, and the extension was buill under the same regulations with the other parts of the canal-It became, in fact, part and parcel of the entire canal. It is declared in the act itself, that for the purpose of making this eon tinnation or extension, the company shall have all the rights, powers and privileges granted by the original act, and be subject to all the restrictions, limitations, conditions and provisions in that act contained, in the same manner and to the same effect as if the company had been originally authorized by the said act “ to construct a canal or artificial navigation to connect the waters of file Delaware river near Easton, with the waters of the Hudson at or near the city of Jersey. It was designed to make it the same as if the original charter had been to construct tbe canal to the Hudson instead of the Passaic. After this extension act, the Morris Canal became, in fact, a canal from the Delaware to the Hudson, and whenever spoken of after that *402 time, must-be so considered. The acts authorizing the borrowing of money, were not passed until after the act authorizing the extension, and. therefore when the Morris Canal is there spoken of, it can, apen no fair construction, mean any thing ■jhort of the entire canal to the Hudson. After this act, the canal to the summit, to Morristown, or to any other intermediate point, might with the same propriety be termed the Morris Canal, as that part between the Delaware and the Passaic. The act clearly contemplated a mortgage on the entire canal, with its appendages and chartered rights. We must then see what was actually covered by the terms of the mortgage. The language used in the granting part is “ all and singular the Morris Canal, so called, being the canal authorized by the laws of the said state of Now-Jersey, as the said oanal has been laid out through the several counties of Warren, Sussex, Morris, Essex and Bergen, in the said state, and is now in a course of completion, from the Delaware to the Hudson river.” Can any language be plain? It was the clear intention of the parties to mortgage the entire canal from the Delaware to the Hudson, and it can mean nothing else. If any doubt remained on this question, the correspondence between the complainant and the president of the company at the time would conclusively settle it.
The land through which the canal runs was not conveyed to the company at the time this mortgage was given, and therefore it is earnestly insisted that it cannot pass by it. There does indeed appear some inconsistency at first view, that it should pass, and yet can it be possible, that if on the line of the route at any place, it should turn out that a deed was obtained for a piece of land since the execution of the mortgage, that such part of the canal is not embraced within it ? This would put an end to all advantage to be derived from the oanal; a purchaser must have the entire property or it can be of no use. I am satisfied, that it is immaterial whether the title passed to the company before or after the date of the mortgage. The law had been passed authorizing the extension to Jersey City, *403 and tlio route had been surveyed, although that route was after-wards changed. The entire canal was, and was so stated in the mortgage to be, only in a course of completion, and in that condition the mortgage was authorized by law. By the charter of the company, this mode of obtaining title, by purchasing the fee of the lands, is not contemplated, hut a mode is pointed out, by which, after an assessment by commissioners, the company acquire a right, not to the land, but t® the use of it so long as it is used for a canal. The feeder too, must pass in the same way, for the canal could he of no service to a mortgagee without water, and this feeder was built as part and parcel of the canal, and is an appendage to it. The wharf or pier at Jersey City, if, as I suppose, it was constructed as an appendage to the canal, must pass upon the same principle. The language of the mortgage is very comprehensive. The langange is, “ together with all and singular the dams, aqueducts, locks, planes, culverts, bridges, towing-paths, embankments, basins, wharves, docks, waters, water-courses, machinery, privileges, appendages and appertenances thereto belonging or appertaining,” evidently meaning to embrace the entire canal and every thing connected with it.
I deem it unnecessary to examine whether the mortgage was acknowledged or recorded according to law. That can only be important on the question of notice, and from the evidence, the State of Indiana had sufficient notice in fact and independent of the record. Milton Stapp, who was the fund commissioner of the State of Indiana at the time the mortgages were given to that State, and who negotiated much of the business between that State and the Morris Canal Company, upon his own examination, admits he was well acquainted at that time with the debt of seven hundred and fifty thousand dollars to the complainant, and that there was a mortgage from Easton to Newark to seciu - it. But he says he did not examine the record, to ascertain its contents, although it was in the office of the secretary of state at Trenton, where it was recorded, but he relied on the statement made to him by tbe president. This was notice *404 enough, and if the agent did not think it worth while to look at the instrument for himself, he cannot complain, nor those he represents, if they should be mistaken in its character or purport. With the information given to this agent, the defendant cannot set up, with any fair pretence, a want of notice of the complainant’s mortgage. The truth is, the existence of this mortgage was notorious, and it has received the common appellation of the Dutch mortgage.
Again, the defendants insist that no decree for sale can be entered in this case, and that the only redress for the complainant is, by sequestration of the tolls and rents and pi’ofits. Upon a common law mortgage, given by the company, this may possibly be true, but this is a statute xnortgage, deriving its construction from statute alone. It goes beyond a common law mox’tgage in transferring the chartered rights. A mortgage of this character is a novelty with us, and as was to be expected,, bi’ings with it much discussion and discx*epancy of opinioix on its true construction. The act authorizes the company to mortgage the entire canal, with its appendages and appertenances,. and I cannot presume that the legislature designed anything else than to invest the mortgagee with all the power and authority incident to an instrument of that kind. Nor do I see' that a contrary construction could be of any advantage to the defendants, while it certainly would gx’eatly prejudice the complainant.
If, however, 1 should mistate the rights of the complainant under this mortgage, upon a sale the pux’chaser will acquire nothing beyond what he is entitled to by the terms of the instrument, which will always be an open qxxestion for any tribunal before whom the trial of the right to the property may come.
So far as the complainant has attempted to impeach the defendants’ mortgages, I do not enter into it, because they are in no way called in question by the pleadings. There is no doubl the State of Indiana has a large and meritorious demand against this Company, and which I should be vexy glad to see paid
*405 There is no justice, however, in their being paid at the expense of the complainant. His mortgage is of long standing was fully known to all the parties, and should constitute the first lien on the property. After that is paid, the claim of the State of Indiana is the next in order.
If the complainant’s mortgage covers the property contained in that to Samuel Merrill, as it appears to me it does, then he should have been made a party. But inasmuch as it involves a very small part of the property, (a dock or pier,) and he was a mere trustee for the State of Indiana, which State is the party defendant here, and more especially as Merrill not being made a party, his right to redeem will not be barred by any decree which may be entered, I deem it unnecessary to delay the complainant by bringing him before the court.
The complainant, therefore, is, in my opinion, entitled to a decree for a sale of the entire canal, with the feeders, docks and appendages belonging to it, and in case it shall bring more than sufficient to satisfy his demand, then the State of Indiana and the other parties holding subsequent liens, should be paid in the order of their priority.
There must be a reference to a master in the usual form.
The interlocutory order was as follows:
“This cause coming on to be heard at a court of chancery, held at Trenton, in the state of New-Jersey, in the term of July, in the year of our Lord one thousand eight hundred and forty-three, in the presence of Asa Whitehead, solicitor, and of counsel with the complainant, and of Benjamin Williamson, solicitor, and of counsel with the State of Indiana, one of the said defendants; the complainant’s bill having heretofore been ordered to be taken as confessed against the Morris Canal and Banking Company, William C. Noyes, Thomas Gr. Talmage, Henry Yates, Abraham Richards and David Selden, the other defendants ; and the bill of complaint of the said complainant, and the answer of the State of Indiana to the same, and the *406 evidence, proof and exhibits in the said cause having been read and heard, and the arguments of counsel on both sides having been heard, and time taken to advise thereon : And thereupon the chancellor is of opinion, and doth hereby declare, that the act of the legislature of the state of New-Jersey which authorized the giving of the complainant’s mortgage, clearly contemplated and intended a mortgage on the entire canal with all its appendages and chartered rights, and that it was the intent of the parties to include in said mortgage the entire canal from the Delaware to the Hudson river, and that the said mortgage in its terms and provisions embraces the whole of the said «anal to the Hudson river, and everything connected with it, including the part then in course of completion and not finished, together with the feeder which was built as part and parcel of the said canal and is an appendage to it, and the wharf or pier at Jersey-City which was also constructed as an appendage to the said canal: And the chancellor being further of opinion, doth declare, that the State of Indiana, at the time of the execution of the said bonds and mortgages of the said Morris Canal and Banking Company to the said State of Indiana, had due notice of the existence, nature and extent of the mortgage of the said complainant; and that, under the above recited act of the legislature, the complainant is entitled to have the amount due on his said mortgage raised by sale of the whole of the said mortgaged premises, including the chartered rights and privileges of the said Morris Canal- and Banking Company, according to the prayer of his bill ; and that his said mortgage is a first lien, and first to be satisfied out of the said premises, and that the balance, if any, be appropriated to the payment of the mortgages of the said State of Indiana : Whereupon it is now, on this fourteenth day of October, in the year of our Lord one thousand eight hundred and forty-three, by his excellency William Pennington, governor and chancellor of the state of New-Jersey, ordered, that it be referred to Theodore Frelinghuysen, junior, one of the masters of this court, to ascertain and report the *407 amount due to the said complainant, upon the mortgage held by him upon the premises mentioned and described in the said bill of complaint; and also the amount due, if any thing, to the said state of Indiana, upon her several mortgages — and to report accordingly; and that he make his report with all convenient speed.”
Cited in Dunn v. Seymour, 3 Stock. 221; N. J. Franklinite Co. v. Ames. 1 Beas; 509; Sus. R. R. Co. v. Mor. and Es. R. R. Co., 4 C. E. Gr. 26; Mor. and Es. R. R. Co. v. Sus. R. R. Co., 5 C. E. Gr. 565; Williamson v. N. J. South. R. R. Co., 10 C. E. Gr. 19, 21; Williamson v. N. J. South. R. R. Co., 11 C. E. Gr. 403; State v. Brown, 3 Dutch. 33.